**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AYMAN LATIF; MOHAMED SHEIKH
ABDIRAHMAN KARIYE; RAYMOND
EARL KNAEBLE IV; NAGIB ALI
GHALEB; SAMIR MOHAMED AHMED
MOHAMED; ABDULLATIF MUTHANNA;
SALEH A. OMAR; FAISAL NABIN
KASHEM; ELIAS MUSTAFA
MOHAMED; ABDUL HAKEIM THABET
AHMED; IBRAHEIM Y. MASHAL;
SALAH ALI AHMED; AMIR MESHAL;
STEPHEN DURGA PERSAUD; STEVEN
WILLIAM WASHBURN,
            *Plaintiffs-Appellants,*

                v.

ERIC H. HOLDER Jr., Attorney
General, in his official capacity as
Attorney General of the United
States; ROBERT S. MUELLER, III, in
his official capacity as Director of
the Federal Bureau of
Investigation; TIMOTHY J. HEALY,
in his official capacity as Director
of the Terrorist Screening Center,
            *Defendants-Appellees.*

No. 11-35407

D.C. No.
3:10-cv-00750-BR

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
May 11, 2012—Portland, Oregon

8475

Filed July 26, 2012

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Nusrat J. Choudhury (argued) and Hina Shamsi, American Civil Liberties Union Foundation, New York, New York; Kevin Diaz, ACLU Foundation of Oregon, Inc., Portland, Oregon; Julia Harumi Mass, ACLU Foundation of Northern California, San Francisco, California; Jennifer Lee Pasquarella, ACLU Foundation of Southern California, Los Angeles, California; and Steven Wilker, Tonkon Torp, LLP, Portland, Oregon, for the plaintiffs-appellants.

James Edward Cox, Jr., Assistant United States Attorney, United States Attorney's Office for the District of Oregon, Portland, Oregon; and Joshua Paul Waldman (argued), Douglas Neal Letter, and Amy Elizabeth Powell, United States Department of Justice, Washington, DC, for the defendants-appellees.

## OPINION

TALLMAN, Circuit Judge:

The Terrorist Screening Center ("TSC"), which is administered by the Federal Bureau of Investigation ("FBI"), main-

tains a list of known and suspected terrorists who are not permitted to fly in United States airspace. Plaintiffs—all United States citizens or legal permanent residents—have good reason to believe that they are on the "No-Fly List" ("List"). They initially submitted grievances through the redress program run by the Transportation Security Administration ("TSA"), but the government has refused to confirm or deny their inclusion on the List, to disclose the bases for their apparent inclusion, or to provide any assurances about future travel.

Rather than continuing to pursue their administrative grievances with TSA, Plaintiffs filed this action in the United States District Court for the District of Oregon against the Director of TSC, the Director of the FBI, and the Attorney General. They demand that the government remove them from the List or provide a more "meaningful" opportunity to contest their apparent inclusion on the List.

The district court dismissed the case, holding that TSA is a necessary party to the litigation because Plaintiffs challenge the adequacy of TSA's grievance procedures, *see* Fed. R. Civ. P. 19, but that TSA could not feasibly be joined in the district court due to 49 U.S.C. § 46110, which grants federal courts of appeals exclusive jurisdiction to review TSA's final orders.[1] We reverse and remand.

---

[1] 49 U.S.C. § 46110(a) provides:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security . . . or the Administrator of the Federal Aviation Administration . . .) in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

# I

## A

The Bush administration established TSC in order to consolidate the government's approach to terrorism screening in response to concerns about the lack of intelligence-sharing among federal agencies following the attacks of September 11, 2001. TSC develops and maintains the List. The National Counterterrorism Center and the FBI submit nominations of known and suspected terrorists, and TSC then decides who to include on the List based on classified intelligence.[2] TSC subsequently provides the List—which contains only sensitive, unclassified identity information, *not* the underlying classified intelligence information—to TSA, which in turn implements the List at the airport.[3]

---

[2]The List is a subset of a terrorist screening database maintained by TSC. To be included in the database, a nomination must (1) contain sufficient identifying data so that a person being screened can be matched to or disassociated from the record, and (2) satisfy minimum substantive derogatory criteria. Generally, nominations must be based on reasonable suspicion derived from the totality of available information that the individual is a known or suspected terrorist. Reasonable suspicion in this context requires " 'articulable' facts which, taken together with rational inferences, reasonably warrant a determination that an individual is known or suspected to be, or has been engaged in conduct constituting, in preparation for, in aid of or related to, terrorism and terrorist activities." The List has its own minimum substantive derogatory criteria, which the government has not disclosed.

[3]Congress tasked TSA with establishing procedures for notifying "airport and airline security officers of the identity of individuals known to pose or suspected of posing, a risk of . . . terrorism or a threat to airline or passenger safety." 49 U.S.C. § 114(h)(2). Through the "Secure Flight" program, aircraft operators provide TSA with data about each passenger. *See* 49 C.F.R. § 1560.101. TSA compares that passenger data with the List and provides the results to aircraft operators. Aircraft operators must obtain clearance from TSA before issuing a boarding pass or allowing a traveler to enter the sterile area of the airport or board an aircraft. *See* 49 C.F.R. § 1560.105(b).

TSC does not accept complaints directly from travelers who believe they have been wrongly included on the List. Instead, pursuant to statutory directive, TSA has established the DHS Traveler Redress Inquiry Program ("DHS TRIP"). *See* 49 U.S.C. § 44903(j)(2)(G)(i) ("[TSA] shall establish a timely and fair process for individuals identified as a threat under [the advanced airline passenger prescreening system] to appeal to [TSA] the determination and correct any erroneous information."); § 44926(a) ("The Secretary of Homeland Security shall establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat under the regimes utilized by [TSA]. . . .").

DHS TRIP is essentially a clearinghouse for traveler grievances. The complainant initiates administrative review by submitting a grievance, *see* 49 C.F.R. § 1560.205(b), which TSA reviews. If the traveler was misidentified (i.e., the traveler is not on the List but has been misidentified as someone who is), then TSA addresses the problem by updating or correcting information in the traveler's record or taking other appropriate action. If the traveler is an exact or near match to someone on the List, TSA forwards the grievance to TSC's redress unit.

Upon receipt, TSC reviews all available information to determine whether the traveler is actually on the List. If the traveler has been misidentified, TSC informs TSA, which then takes corrective action. If the traveler is an exact match, TSC coordinates with the original nominating agency to determine whether the traveler should remain on the List. TSC is "the final arbiter" of whether the traveler stays on the List, and informs TSA of the final determination.

TSA sends a determination letter to the traveler when review is complete. The letter tells the traveler that review of his DHS TRIP grievance is complete, but does not confirm or

deny whether the traveler is (or ever was) on the List or provide any assurances about future travel. In some cases, the letter informs the traveler about the availability of an administrative appeal within TSA and/or judicial review in the United States Courts of Appeals under § 46110.

B

Plaintiffs are fifteen United States citizens and lawful permanent residents who allege that they were prevented from boarding domestic and international commercial flights in the United States and overseas due to their apparent inclusion on the List.[4] They submitted DHS TRIP grievances but, before most received any response, filed this lawsuit challenging their apparent inclusion on the List and claiming that the government's alleged failure to afford them a meaningful opportunity to contest their apparent inclusion violates their Fifth Amendment right to due process, and constitutes unlawful agency action in violation of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706. They seek an injunction directing the government to either remove them from the List or provide "a legal mechanism that affords them notice of the reasons and bases for their placement on the No Fly List and a meaningful opportunity to contest their continued inclusion on the No Fly List."

After this case was initiated, Plaintiffs each received a DHS TRIP determination letter. Some letters state that "DHS has researched and completed our review of your case," that "we can neither confirm nor deny any information about you which may be within federal watchlists," and that "[t]his letter constitutes our final agency decision, which is reviewable by the United States Court of Appeals under 49 U.S.C. § 46110." The remaining letters state that "it has been determined that

---

[4]A few of the plaintiffs were allegedly stranded abroad at the time this lawsuit was originally filed, but all have now been granted "one-time waivers" to return home.

no changes or corrections are warranted at this time," that "you may file a request for administrative appeal with [TSA]," and that "[t]his determination will become final 30 calendar days after you receive this letter unless you file a timely administrative appeal. Final determinations are reviewable by the United States Court of Appeals pursuant to 49 U.S.C. § 46110." Plaintiffs have not pursued further administrative review by TSA or filed a § 46110 petition in a court of appeals.

Instead, Plaintiffs pursued their claims before the district court, which ultimately dismissed the action. The court read their complaint to raise only procedural claims regarding the sufficiency of the grievance procedures available to contest their apparent inclusion on the List. The court held that TSA is a necessary party to the litigation, but that it could not be joined in light of § 46110. *See* Fed. R. Civ. P. 19. Plaintiffs timely appealed.

## II

We review a district court's decision regarding joinder for abuse of discretion, but review legal conclusions underlying that decision de novo. *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1067 (9th Cir. 2010). Construing the operative complaint "generously," *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000), Plaintiffs have raised both a substantive challenge to their own apparent inclusion on the List and a procedural challenge to the adequacy of the redress procedures available to challenge their apparent inclusion on the List.

## A

[1] The district court has jurisdiction over Plaintiffs' substantive challenge.[5] "Section 46110 grants exclusive jurisdic-

---

[5]The operative complaint is far from a model pleading. On remand, the district court may wish to direct Plaintiffs to amend their complaint to state with greater specificity the legal basis for their substantive due process challenge to their apparent inclusion on the List.

tion to the federal courts of appeals to 'review' the 'orders' of a number of agencies," including TSA, DHS, and the Federal Aviation Administration ("FAA")—but not TSC or the FBI. *Ibrahim v. Dep't of Homeland Security*, 538 F.3d 1250, 1254 (9th Cir. 2008) ("*Ibrahim I*") (alterations omitted) (quoting *Clark v. Busey*, 959 F.2d 808, 811-12 (9th Cir. 1992)). Because TSC "actually compiles the list of names ultimately placed" on the List, § 46110 does not strip the district court of federal question jurisdiction over substantive challenges to the inclusion of one's name on the List. *Id.* at 1255 (internal quotation marks omitted).[6] Accordingly, we must remand Plaintiffs' substantive challenge.

B

Unlike Plaintiffs' substantive challenge, their procedural due process challenge undoubtedly requires at least some review of TSA's orders, namely, the policies and procedures implementing DHS TRIP. Indeed, Plaintiffs concede that "[b]ecause DHS TRIP is the process by which the government purports to offer 'redress' to aggrieved travelers, its structural deficiencies will be central to the resolution of Plaintiffs' [procedural] claims." Consequently, the district court's determination that TSA is a necessary party was not an abuse of discretion. The district court, however, erred in holding that joinder of TSA is infeasible in light of § 46110.

1

At the heart of this appeal is the parties' dispute about the reach of § 46110. The government argues that we have exclu-

---

[6]With regard to the applicability of § 46110, there is no meaningful difference between the "initial placement" of a name on the List and "continued placement" or "removal." Although the government does attempt to draw this distinction in order to distinguish this case from *Ibrahim I*, it concedes that TSC decides both whether travelers are placed on the List and whether they stay on it.

sive jurisdiction because Plaintiffs' procedural challenge requires review of TSA's existing redress program, and § 46110 applies to judicial review of TSA's final orders. Plaintiffs contend that § 46110 does not strip the district court of jurisdiction because, at bottom, they challenge TSC's decision to include or retain them on the List, and TSC is not an agency listed in § 46110. We conclude that § 46110 does not apply.

**[2]** Section 46110 "does not grant the court of appeals direct and exclusive jurisdiction over every possible dispute" involving TSA. *Americopters, LLC v. FAA*, 441 F.3d 726, 735 (9th Cir. 2006). " '[T]he district court's federal question jurisdiction is preempted by § 46110 as to those classes of claims reviewable under § 46110.' " *Id.* at 736 (alterations omitted) (quoting *Mace v. Skinner*, 34 F.3d 854, 859-60 (9th Cir. 1994)). The district court, therefore, may retain jurisdiction over claims challenging TSA's orders when "§ 46110 does not explicitly allow us to hear them." *Id.* at 735.

**[3]** Section 46110 grants us jurisdiction only "to affirm, amend, modify, or set aside" any part of TSA's orders, or to order TSA to "conduct further proceedings." 49 U.S.C. § 46110(c). "[W]e have no jurisdiction to grant other remedies" under § 46110. *Americopters*, 441 F.3d at 735 (citing *Mace*, 34 F.3d at 858).

In several prior cases, we allowed broad constitutional claims for damages against the FAA to proceed in the district court because, under § 46110, we lack jurisdiction to grant damages. *See, e.g.*, *Crist v. Leippe*, 138 F.3d 801, 802-05 (9th Cir. 1998) (holding that the district court had jurisdiction over a due process claim for damages based on the FAA's alleged spoliation of evidence while the plaintiff 's FAA hearing was pending); *Foster v. Skinner*, 70 F.3d 1084, 1086-88 (9th Cir. 1995) (holding that the district court had jurisdiction over Fifth and Sixth Amendment *Bivens* claims); *Mace*, 34 F.3d at 856-60 (same). The district court's jurisdiction over damages

claims against § 46110 agencies (which include TSA, DHS, and the FAA, but not TSC or the FBI) is not without limits. The district court lacks jurisdiction to hear damages claims that are " 'inescapably intertwined with a review of the procedures and merits surrounding the [agency's] order.' " *Americopters*, 441 F.3d at 736 (quoting *Crist*, 138 F.3d at 803). A damages claim, however, is not " 'inescapably intertwined' " if it " 'constitute[s] a broad challenge to the allegedly unconstitutional actions of the [agency],' and is not a claim merely 'based on the merits of [an] individual situation.' " *Id.* (footnote and citation omitted) (quoting *Mace*, 34 F.3d at 858-59). The "inescapably intertwined" doctrine "prevents plaintiffs from crafting constitutional tort claims either as a means of 'relitigat[ing] the merits of the previous administrative proceedings,' or as a way of evading entirely established administrative procedures." *Id.* (citation omitted) (quoting *Tur v. FAA*, 104 F.3d 290, 292 (9th Cir. 1997)).

## 2

Plaintiffs' procedural challenge is unlike any we have addressed in the past. So far as we can discern, all of our prior cases required review of orders issued either by an agency explicitly included in § 46110 (e.g., TSA, DHS, or the FAA) or by an agency excluded from that provision (e.g., TSC)—not orders issued by both. *See, e.g., Ibrahim I*, 538 F.3d at 1254-57 (addressing separately challenges to TSC's decision to include the plaintiff on the List and challenges to TSA airport security policies); *Gilmore v. Gonzales*, 435 F.3d 1125, 1131-34 (9th Cir. 2006) (reviewing a TSA Security Directive); *Crist*, 138 F.3d at 802-05 (addressing challenges to FAA orders); *Foster*, 70 F.3d at 1086-88 (same); *Mace*, 34 F.3d at 856 (same).

**[4]** Plaintiffs' procedural challenge requires judicial review of orders issued both by TSA, which is named in § 46110, and by TSC, which is not. TSA's implementation of DHS TRIP is at issue, but TSA is merely a conduit for a traveler's chal-

lenge to inclusion on the List. TSA simply passes grievances along to TSC and informs travelers when TSC has made a final determination. TSC—not TSA—actually reviews the classified intelligence information about travelers and decides whether to remove them from the List. And it is TSC—not TSA—that established the policies governing that stage of the redress process.

**[5]** If Plaintiffs are entitled to judicial relief, any remedy must involve both TSA and TSC. Here, Plaintiffs demand to know why they are apparently included on the List and an opportunity to advocate for their removal. Ordering TSA to tell Plaintiffs why they were included on the List and to consider their responses in deciding whether they should remain on it, would be futile. Such relief must come from TSC—the sole entity with both the classified intelligence information Plaintiffs want and the authority to remove them from the List. Thus, because we would not be able to provide relief by simply amending, modifying, or setting aside *TSA's orders* or by directing *TSA* to conduct further proceedings, we lack jurisdiction under § 46110 to address Plaintiffs' procedural challenge.

3

Having concluded that we lack jurisdiction under § 46110, we must now consider whether the district court has jurisdiction to hear Plaintiffs' procedural challenge. " '[W]here Congress intends to preclude judicial review of constitutional claims, its intent to do so must be clear.' " *Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126, 2132 (2012) (alterations omitted) (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). But "where Congress simply channels judicial review of a constitutional claim to a particular court," we ask "only whether Congress' intent to preclude district court jurisdiction was 'fairly discernible in the statutory scheme.' " *Id.* (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)).

**[6]** Here, we need not determine which standard applies because it is neither clear nor fairly discernible from the statutory scheme that Congress intended to strip the district court of jurisdiction over Plaintiffs' constitutional claim. Section 46110 does not apply to TSC. And we have consistently held that § 46110 is not an absolute bar to district court review of TSA's orders. *See, e.g.*, *Crist*, 138 F.3d at 804-05; *Foster*, 70 F.3d at 1088; *Mace*, 34 F.3d at 860.

The considerations that have led us to limit a district court's jurisdiction to review claims against § 46110 agencies do not apply here. *See Americopters*, 441 F.3d at 736 (explaining that a claim for damages against a § 46110 agency is barred where it is merely "a way of evading entirely established administrative procedures" or an effort to relitigate the merits of a previous administrative proceeding). Our lack of jurisdiction under § 46110 to grant relief is not the result of artful pleading or any deliberate attempt by Plaintiffs to evade § 46110. Rather, it arises from the unique relationship between TSA and TSC in processing traveler grievances to determine who should remain on the List.

**[7]** Plaintiffs raise broad constitutional claims that do not require review of the merits of their individual DHS TRIP grievances.[7] DHS TRIP does not appear to provide any mechanism for Plaintiffs to challenge the adequacy of the process itself, and the record does not reveal whether their procedural challenge has been reviewed on the merits in any prior administrative proceeding. Accordingly, we also remand Plaintiffs' procedural challenge to the district court for such further proceedings as may be required to make an adequate record to support consideration of their claims.

---

[7]We do not address whether Plaintiffs' failure to pursue their DHS TRIP grievances precludes judicial review of their claims because the parties have not briefed this issue, nor has the district court had an opportunity to consider it.

### III

**[8]** At oral argument, the government was stymied by what we considered a relatively straightforward question: what should United States citizens and legal permanent residents do if they believe they have been wrongly included on the No-Fly List? In *Ibrahim I*, we held that district courts have original jurisdiction over travelers' substantive challenges to inclusion on the List. Today, we take another step toward providing an answer. We hold that the district court also has original jurisdiction over Plaintiffs' claim that the government failed to afford them an adequate opportunity to contest their apparent inclusion on the List. We leave it to the district court to determine whether to require joinder of TSA on remand. We hold only that § 46110 presents no barrier to adding TSA as an indispensable party. We also leave to the sound judgment of the district court how to handle discovery of what may be sensitive intelligence information. *See* Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1-16.

REVERSED and REMANDED.