Opinion for the Court filed by Circuit Judge HENDERSON.
Opinion concurring in the judgment filed by Circuit Judge KAVANAUGH.
KAREN LECRAFT HENDERSON, Circuit Judge:
Mehmet Ege, a pilot for Emirates Airlines, petitions for review of an order of *793 the Transportation Security Administration (TSA) that prohibits him from flying to, from or over the United States. Ege believes the TSA’s prohibition is based on his alleged inclusion on the “No-Fly List,” a subset of the Terrorist Screening Database (TSDB) used by the TSA to “deny boarding of individuals on commercial aircraft operated by U.S. carriers or flying'to, from, or over the United States.” Resp’t’s Br. 7.[1] He seeks removal from the No-Fly List or, at a minimum, a “meaningful opportunity to be heard.” Pet’r’s Br. 23.
The problem, however, is that neither the TSA nor the Department of Homeland Security (DHS) — the only two respondent agencies — has “authority to decide whose name goes on the No-Fly List.” Ibrahim v. DHS, 538 F.3d 1250, 1254 n. 6 (9th Cir.2008). Instead, the Terrorist Screening Center (TSC), which is administered by the Federal Bureau of Investigation (FBI), see About the Terrorist Screening Center, FBI, http://www.fbi.gov/about-us/ nsb/tsc/about-the-terrorist-scréeningcenter (last visited Apr. 26, 2015), is “the sole entity with both the classified intelligence information” Ege wants and “the authority to remove” names from the No-Fly List/TSDB. Latif v. Holder, 686 F.3d 1122, 1129 (9th Cir.2012). And because we have no jurisdiction under 49 U.S.C. § 46110 to issue an order binding the TSC, we ipso facto cannot redress Ege’s injury even if we were inclined to agree with him. For this reason, we must dismiss his petition for lack of standing.
After experiencing unspecified travel issues in 2009,[2] Ege submitted an online inquiry to the DHS’s Traveler Redress Inquiry Program (DHS TRIP), the administrative review mechanism that allows an individual to seek assistance if he believes he has “been improperly or unfairly delayed or prohibited from boarding an aircraft.” 49 C.F.R. § 1560.205(a).[3] Ege’s *794 DHS TRIP inquiry was reviewed by the TSA, which responded by letter on March 24, 2011, informing him that his record had been reviewed and that any appropriate changes or corrections had been made. Apparently, Ege’s travel woes persisted and he subsequently contacted the TSA to complain. On February 6, 2012, the TSA sent Ege another letter, stating that it had “conducted a review of any applicable records in consultation with other federal agencies, as appropriate” and “determined that no changes or corrections [were] warranted at th[at] time.” Resp’t’s Br. 15. The TSA’s February 6 letter also informed Ege that he could administratively appeal its initial determination.
Ege did so on February 25, 2012, submitting a letter that expressed his belief that he had been placed on the No-Fly List and that his alleged inclusion was hampering his employment as an international pilot. On January 22, 2013, the TSA issued its final order, which upheld the initial agency decision and told Ege that he could seek review “by a United States Court of Appeals under 49 U.S.C. § 46110.” Pet’r’s Br. Ex. A. On April 4, 2013,[4] Ege petitioned this Court for review under section 46110, which provides this Court with jurisdiction to review orders issued by the DHS, the TSA and the Federal Aviation Administration (FAA). 49 U.S.C. § 46110(a).
Uncertain about our power to adjudicate Ege’s petition, we asked the parties to submit supplemental briefs addressing whether this Court has jurisdiction under 49 U.S.C. § 46110 to hear Ege’s challenge to his alleged inclusion in the TSDB and on the No-Fly List. The parties complied, both assuring us that Ege’s injury is redressable on section 46110 review. Despite their agreement, “[w]hen there is doubt about a party’s constitutional standing,” we must “resolve the doubt, sua sponte if need be.” Lee’s Summit, Mo. v. Surface Transp. Bd., 231 F.3d 39, 41 (D.C.Cir.2000); see also Steel Co., 523 U.S. at 95, 118 S.Ct. 1003 (“‘[E]very federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction ... ’ even though the parties are prepared to concede it.” (quoting Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934) (quotation mark omitted))). Based on our independent assessment, we conclude that we do not have the requisite Article III jurisdiction to allow Ege’s case to proceed.
“[T]he irreducible constitutional minimum of standing contains three elements.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, Ege must have suffered an “injury in fact.” Id. Second, his injury must be “fairly traceable to the challenged action[s] of the [TSA or DHS], and not the result of the independent action of some third party not before the court.” Id. (alterations omitted). And *795 third, “it must be likely, as opposed to merely speculative, that [his] injury will be redressed by a favorable decision.” Id. at 561, 112 S.Ct. 2130 (quotation marks omitted).
The jurisdictional deficiency dooming Ege’s petition lies in his failure to satisfy the second and third standing elements, as articulated in Lujan. See 504 U.S. at 560-61, 112 S.Ct. 2130. His failure is due, in turn, to the relief he seeks. True, Ege would like to “board ... a plane” and to fly “to, from, or over the United States.” Concur. Op. 797. But Ege makes plain, and the TSA agrees, that his injury is his alleged inclusion on the No-Fly List and in the TSDB and the precise relief he seeks is either removal from them or an opportunity to more effectively argue for removal. See Pet’r’s Reply Br. 9 (arguing that DHS and TSA erred “when they included Mr. Ege on Terrorist Screening Database” and “No-Fly List”); see also Resp’t’s Br. 8 (Ege “appears to argue that he has been wrongfully placed in the TSDB and on the No-Fly List”).[5]
Section 46110 gives us authority to review orders from the TSA, DHS and FAA. 49 U.S.C. § 46110. “[T]he sole entity with. ... the authority to remove” names from the No-Fly List/TSDB, however, is the TSC. See Latif, 686 F.3d at 1129. Because the “ ‘case or controversy’ limitation” of Article III requires that we “act only to redress injury that fairly can be traced to the challenged action of the” agencies before us (ie., DHS and TSA), “and not injury that results from the independent action of some third party not before the court” .(ie., the TSC), Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), we have no power to redress Ege’s No-Fly List/ TSDB-related injury. See also Fulani v. Brady, 935 F.2d 1324, 1330 (D.C.Cir.1991) (“[T]his Court has denied standing where the plaintiff seeks to change the defendant’s behavior only as a means to alter the conduct of a third party, not before the court, who is the direct source of the plaintiffs injury.” (quotation marks and emphasis omitted)). See generally Common Cause v. Biden, 748 F.3d 1280, 1284 (D.C.Cir.2014) (“To invoke the jurisdiction of the federal courts, ... a proper defendant [must] be sued.”).
The Ninth Circuit is in accord.[6] It has observed that the “TSA is merely a conduit for a traveler’s challenge to inclusion on the” No-Fly List and in the TSDB, “simply passing] grievances along to TSC and informing] travelers when TSC has made a final determination.” Latif, 686 F.3d at 1128. Because “TSC — not TSA— actually reviews the classified intelligence information about travelers and decides whether to remove them from the List” and “established the policies governing *796 that stage of the redress process,” id., we agree that we cannot, on section 46110 review, provide relief to an individual included on the No-Fly List or in the TSDB by “simply amending, modifying, or setting aside TSA’s orders or by directing TSA to conduct further proceedings.” Id. at 1129 (emphases in original); see also Arjmand, 745 F.3d at 1302 (“[S]ince § 46110 does not grant circuit courts jurisdiction to review TSC orders, the statute cannot grant jurisdiction over claims seeking removal from the TSDB.”).
Both Ege and the TSA argue that the Ninth Circuit got it wrong but we are not persuaded. They insist that Ege’s challenge to his alleged No-Fly List/TSDB status is “inescapably intertwined” with the TSA order of which he seeks review. Cf. Merritt v. Shuttle, Inc., 245 F.3d 182, 187 (2d Cir.2001) (“statutes such as Section 46110(c)” include “claims that are ‘inescapably intertwined’ with review of such orders”). Although courts use the “inescapably intertwined” doctrine to review a claim not expressly included in a jurisdictional grant, we are aware of no case — and neither party cites one — in which a court has used the “inescapably intertwined” doctrine to enjoin a party not so included. This is unsurprising; were we able to use the “inescapably intertwined” doctrine to redress injuries caused by absent parties, we would routinely “offend[ ] fundamental principles of separation of powers.” See Steel Co., 523 U.S. at 94, 118 S.Ct. 1003.
The TSA suggests we could simply issue an injunction requiring it to allow Ege to board an airplane, leaving unaffected his status regarding the TSDB. Resp’t’s Supp. Br. 9. Our concurring colleague agrees. See Concur. Op. 797-98. But the TSA’s proposal falls short for at least two reasons. First, as a threshold matter, merely “boarding” a plane is not the relief Ege seeks — rather, he wants off the No-Fly List and removed from the TSDB. See supra p. 794-95 & n. 5. Second, as. a practical matter, the TSA’s proposal would do Ege no good. Ege can board and pilot an airplane and, as a commercial pilot for Emirates Airlines, he has boarded and piloted airplanes as recently as October 2013. See Pet’r’s Br. Ex. H (Ege’s flight logs). The problem is that Ege cannot board or pilot flights destined for the United States. If his alleged TSDB status remains unchanged, it is possible that one of “several” other federal agencies could use the TSDB to prevent Ege from crossing the U.S. border. See Resp’t’s Br. 7. For example, the Department of State — an entity, like the FBI and the TSC, that is not included in section 46110’s grant of jurisdiction — uses the TSDB to screen individuals who “apply for ... visa[s].” Office of the Inspector General, Follow-up Audit of the Terrorist Screening Center (2007), available at http://www.justice.gov/ oig/reports/FBI/a0741/intro.htm; see also Ibrahim, 669 F.3d at 989 (State Department “uses a subset of the TSDB to screen visa applicants”).
Because Ege’s alleged TSDB status would prevent him from flying “to, from, or over the United States ” even'if the TSA allowed him “to board or pilot a plane,” Concur. Op. 797 (emphasis added), it is “merely speculative” at best that the TSA’s proposal would remedy Ege’s purported injury. Lujan, 504 U.S. at 561, 112 S.Ct. 2130 (quotation marks omitted). We plainly need more than the TSA’s assurance — first given at oral argument — that the entire Executive Branch would allow Ege to board or pilot a plane and cross into the United States before we can conclude that Ege’s alleged injury is redressable. Cf. Smith v. Bayer Corp., — U.S. —, 131 S.Ct. 2368, 2379, 180 L.Ed.2d 341 (2011) (generally, “a court’s judgment binds only the parties to a suit”). Instead, Ege would need to add the TSC as a *797 respondent — something he cannot do under section 46110.
Relying on section 46110 as the jurisdictional basis of our review, Ege seeks removal of his alleged inclusion on the No-Fly List and in the TSDB. The agencies whose actions are reviewable under section 46110, however, have no “authority to decide whose name goes on the No-Fly List.” Ibrahim, 538 F.3d at 1254 n. 6; see also Arjmand, 745 F.3d at 1303. Because we cannot redress Ege’s injury, we dismiss his petition for lack of standing.

So ordered.

. "As a matter of policy, the federal government does not confirm or deny whether any particular individual is included in the TSDB or on any of its subset lists,” including the No-Fly List. Resp’t’s Br. 8. Nothing herein should be construed as indicating whether Ege is, in fact, on any list or in any database maintained by the Government.

. Although Ege refers to his 2006 removal from the Master Crew List, a manifest that must be submitted to the TSA by every foreign air carrier operating flights over the United States and that contains identifying information for "all crew members ... operating and servicing” such flights, 19 C.F.R. § 122.49c(a), he never petitioned for review of the administrative denial of that removal, which denial occurred in 2008. We therefore limit our review to the unspecified travel difficulty Ege experienced in 2009 that led him to seek redress through DHS TRIP and that culminated in the 2013 TSA order, which he petitions that this Court review. We note, however, that Ege believes his removal from the Master Crew List also resulted from his alleged inclusion in the TSDB. See Pet’r’s Br. 9 ("The Master Crew List operates similar to the Do-Not Fly list. The TSA makes its determination of whether a pilot should stay on the master crew list by cross-checking the information with” the TSC). For that reason, our analysis would not change had he challenged his Master Crew List removal in his petition for review.

.As our concurring colleague observes, see Concur. Op. 797-98, DHS TRIP was created in response to a congressional directive that it “establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat.” 49 U.S.C. § 44926(a). But it is axiomatic that the DHS’s attempt to comply with the Congress’s mandate in a manner consistent with the “constitutional elements of jurisdiction,” which jurisdiction is the "essential ingredient of separation and equilibration of powers,” does not affect our independent obligation to determine whether a redressable case or controversy exists. Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). And based on the interplay among the DHS, the TSA and the TSC in the context of No- *794 Fly Lisl/TSDB challenges, a petitioner cannot, consistent with constitutional standing principles, raise a No-Fly Lisl/TSDB challenge through review pursuant to section 46110, notwithstanding his compliance with the DHS TRIP process.

. Our concurring colleague correctly observes that Ege filed his petition for review after expiration of the 60-day time limit prescribed by 49 U.S.C. § 46110(a). See Concur. Op. 797-98. Because we lack Article III jurisdiction, our "only function ... is that of announcing the fact and dismissing the cause.” Steel Co., 523 U.S. at 94, 118 S.Ct. 1003 (quoting Ex parte McCardle, 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). Accordingly, we take no position on whether Ege demonstrated “reasonable grounds” to excuse his untimely filing. 49 U.S.C. § 46110; see also Avia Dynamics, Inc. v. FAA, 641 F.3d 515, 519 (D.C.Cir.2011) (section 46110 filing deadline not jurisdictional).

. Indeed, even after we requested the parties to submit supplemental briefing regarding this Court's jurisdiction under section 46110, Ege made no attempt to recast the No-Fly LisVTSDB relief he seeks. See Pet’r's Supp. Br. 1; see also Resp't’s Supp. Br. 2.

. The Ninth Circuit characterized the difficulty inherent in mounting a No-Fly List/TSDB challenge under section 46110 as one of subject-matter jurisdiction rather than Article III standing because the TSC was named as a defendant/respondent in each case in which the issue arose. See Ibrahim, 538 F.3d at 1253; Latif, 686 F.3d at 1127; Arjmand v. DHS, 745 F.3d 1300, 1302 (9th Cir.2014). Because the TSC was before the court in those cases, the question was whether the court had '‘original jurisdiction” under section 46110 to enjoin it. Arjmand, 745 F.3d at 1302. Ege, however, did not name the TSC as a respondent and, accordingly, the jurisdictional deficiency in his petition is better understood as no Article III standing because the sole entity with the authority to redress his injury is missing.