RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SAEB MOKDAD,

*Plaintiff-Appellant,*

*v.*

No. 14-1094

LORETTA E. LYNCH, Attorney General, et al.

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-12038—Victoria A. Roberts, District Judge.

Argued:  October 8, 2014

Decided and Filed:  October 26, 2015

Before:  BATCHELDER, GILMAN, and GIBBONS, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:**  Nabih H. Ayad, AYAD LAW, PLLC, Canton, Michigan, for Appellant.  Joshua Waldman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:**  Nabih H. Ayad, AYAD LAW, PLLC, Canton, Michigan, for Appellant.  Joshua Waldman, Sharon Swingle, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

       GIBBONS, J., delivered the opinion of the court in which GILMAN, J., joined, and BATCHELDER, J., joined in Sections I through III.  BATCHELDER, J. (pg. 13), delivered a separate opinion concurring in part and dissenting Section IV.

1

———————————————

**OPINION**

———————————————

JULIA SMITH GIBBONS, Circuit Judge.  This case presents issues of first impression in this circuit: whether a district court has subject-matter jurisdiction to hear (1) a plaintiff's direct challenge to his placement on the No Fly List, a placement that is made by an agency called the Terrorist Screening Center, and (2) his challenge to the adequacy of the procedures to contest his inclusion on the No Fly List, a process that is governed by the Transportation Security Administration (TSA).  On the former, we hold that the district court does have subject-matter jurisdiction; we reverse the district court's contrary holding and remand for further proceedings. On the latter, we decline to reach the question and dismiss the plaintiff's claims without prejudice because he failed to join a necessary party (TSA) as a defendant.

I.

Saeb Mokdad is a naturalized United States citizen and resident of Dearborn, Michigan who alleges that on at least three occasions since September 2012, he has been denied boarding on commercial airline flights between the United States and his native country of Lebanon. Mokdad alleges that he has been placed on the federal government's No Fly List.

Mokdad alleges that on three occasions he applied for redress under the Department of Homeland Security (DHS) Traveler Redress Inquiry Program (TRIP).  On November 19, 2012, Mokdad received a letter from DHS that did not confirm or deny whether he was on the No Fly List but informed him that "[i]n response to [your] request, we have conducted a review of any applicable records in consultation with other federal agencies, as appropriate.  It has been determined that no changes or corrections are warranted at this time." Compl. Ex. 2, 3, ECF No. 6-2.  The letter notified him of his right to "file a request for administrative appeal with the Transportation Security Administration (TSA)" within 30 days, and further informed him that the DHS TRIP determination would become final if he did not do so. *Id.*  The letter stated that "[f]inal determinations are reviewable by the United States Court of Appeals pursuant to 49 U.S.C. § 46110." *Id.*

Mokdad did not file an administrative appeal with the TSA or a petition with the Court of Appeals but instead filed a complaint, dated May 8, 2013, in the United States District Court for the Eastern District of Michigan seeking injunctive and declaratory relief against the Attorney General of the United States, the Director of the Federal Bureau of Investigation, and the Director of the Terrorist Screening Center. Mokdad did not name TSA or any TSA officer as a defendant. Mokdad requested, in part, that the district court order Defendants to remove him from the No Fly List and order Defendants to provide "notice of the factual basis for the placement of individuals on the No Fly List and a meaningful opportunity to contest their inclusion on said list." Compl., 8-9, ECF No. 1.

The government moved to dismiss Mokdad's complaint on the basis that 49 U.S.C. § 46110 stripped the district court of subject-matter jurisdiction. Section 46110 makes clear that the federal courts of appeals have exclusive jurisdiction to review the orders of certain federal agencies, including the Transportation Security Administration (TSA):

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. § 46110(a). (The Under Secretary of Transportation for Security was the head of TSA when TSA was created in 2001 as part of the Department of Transportation; TSA and its "functions, personnel, assets, and liabilities" were moved to DHS in 2002. *See* 6 U.S.C. § 203(2).)

> [T]he court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Under Secretary, or Administrator to conduct further proceedings. . . . [T]he court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary, Under Secretary, or Administrator, if supported by substantial evidence, are conclusive.

49 U.S.C. § 46110(c).

The No Fly List, however, is developed and maintained by the Terrorist Screening Center (TSC), a multi-agency center that was created in 2003 and is administered by the Federal Bureau of Investigation (FBI), which in turn is part of the Department of Justice. TSC is staffed by officials from multiple agencies, including the FBI, DHS, Department of State, Customs and Border Protection, and TSA. The No Fly List is a subset of the Terrorist Screening Database (TSDB), the U.S. government's consolidated terrorist watchlist that is also maintained by TSC. Inclusion on the No Fly List "requires heightened derogatory criteria over and above the general reasonable suspicion standard for inclusion in the TSDB." Lubman Decl., 7, ECF No. 24-2. TSC personnel decide whether to accept or reject the "nomination" of a person by the FBI or the National Counterterrorism Center (NCTC) to the TSDB or the No Fly List. TSC also decides whether to remove a name from the TSDB after it receives a redress request that has been submitted through DHS TRIP.[1]

Mokdad thus argued that § 46110 does not divest the district court of subject-matter jurisdiction over his claims, because he sought to challenge not TSA's redress letter issued to him but rather his underlying placement on the No Fly List—a placement made by TSC, which is not one of the agencies enumerated in § 46110. Mokdad relied on *Ibrahim v. Department of Homeland Security*, 538 F.3d 1250, 1256 (9th Cir. 2008), which held that the district court had subject-matter jurisdiction over the plaintiff's claim regarding placement of her name on the No Fly List because "[t]he No Fly List is maintained by the Terrorist Screening Center, and section 46110 doesn't apply to that agency's actions." *Ibrahim* also suggested that the doctrine of "inescapable intertwinement"—under which a special review statute such as § 46110 applies not only to challenges to orders by a covered agency, but to *claims* inescapably intertwined with an order by a covered agency—does not extend to *orders* (such as TSC's order placing a person on the No Fly List) that are intertwined with orders of agencies that fall under the special review statute (such as TSA). *See id.* at 1255–56. *Latif v. Holder*, 686 F.3d 1122, 1130 (9th Cir. 2012), on which Mokdad also relied, extended *Ibrahim* to plaintiffs' claim "that the government failed

---

[1]According to TSC Acting Deputy Director for Operations Debra I. Lubman, this is true "unless the legal authority to make such a determination resides, in whole or in part, with another government agency. In such cases, TSC will only prepare a recommendation for the decision-making agency and will implement any determination once made." Lubman Decl., 19, ECF No. 24-2. No one—including Lubman in her declaration, or the government in its brief before this court—has suggested that TSA is one of the special agencies with statutory authority to make its own decision, separate from TSC, about whether someone belongs in the TSDB or on the No Fly List.

to afford them an adequate opportunity to contest their apparent inclusion on the [No Fly] List"—a claim challenging the adequacy of the redress process.

The district court in this case declined to follow *Ibrahim* and *Latif*, finding that the Ninth Circuit had "appl[ied] a narrow reading of the statute." *Mokdad v. Holder*, No. 13-12038, 2013 WL 8840322, at *4 (E.D. Mich. Dec. 5, 2013). The district court found that TSC's alleged order placing Mokdad on the No Fly List was inescapably intertwined with TSA orders. *Id.* at *4–5. The district court thus concluded that it lacked subject-matter jurisdiction over Mokdad's claims and dismissed his complaint pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* at *5.

Mokdad timely appealed. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291, and we review *de novo* a district court's dismissal of a cause of action for lack of subject-matter jurisdiction. *Portsmouth Ambulance, Inc. v. United States*, 756 F.3d 494, 498 (6th Cir. 2014).

II.

At the outset we must focus closely on what exactly Mokdad has alleged and against whom. Mokdad styled his complaint to raise two claims, each against three defendants: the Attorney General, the Director of the FBI, and the Director of the TSC. First, Mokdad alleged that defendants violated the Fifth Amendment Due Process Clause by harming his reputation and depriving of him of his right to travel while failing to provide post-deprivation notice and a hearing. Second, Mokdad alleged that defendants had engaged in unlawful agency action under the Administrative Procedure Act (APA). Mokdad's APA claim is premised on his contention that "defendants' actions as described herein"—namely, allegedly placing him on the No Fly List, and "fail[ing] to provide a fair and transparent remedial mechanism that would allow affected individuals to challenge their inclusion"—"were arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights," in violation of 5 U.S.C. § 706. Compl., 1, 8, ECF No. 1.

For the purposes of the exclusive-review statute, § 46110, it is significant that Mokdad's arguments fall into two groups. First, Mokdad challenges the adequacy of the procedures established for him to contest his alleged inclusion on the No Fly List (*i.e.*, the redress process):

he argues that the procedures are unlawful under the APA and unconstitutional under the Fifth Amendment. Second, Mokdad challenges his alleged placement on the No Fly List: he argues that defendants' actions were unlawful under the APA. We consider these two types of challenges in turn.

III.

To the extent that Mokdad challenges the adequacy of the redress process, his claims amount to a challenge to a TSA order. Congress has specifically directed DHS and TSA—not TSC—to establish a redress process for travelers who believe they have been wrongly included on the No Fly List. "The Secretary of Homeland Security shall establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat under the regimes utilized by the Transportation Security Administration, United States Customs and Border Protection, or any other office or component of the Department of Homeland Security." 49 U.S.C. § 44926(a). The head of TSA is required to "establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system." 49 U.S.C. § 44903(j)(2)(C)(iii)(I). TSA is additionally required to "establish a timely and fair process for individuals identified as a threat under [the passenger screening system] to appeal to the Transportation Security Administration the determination and correct any erroneous information." 49 U.S.C. § 44903(j)(2)(G)(i).

TSA has issued regulations carrying out its responsibilities under these statutory authorities. 49 C.F.R. §§ 1560.201–.207. Under § 1560.205(d), "TSA, in coordination with the TSC and other appropriate Federal law enforcement or intelligence agencies, if necessary, will review all the documentation and information requested from the individual" who is seeking redress, "correct any erroneous information, and provide the individual with a timely written response." However, according to Lubman, TSC determines "whether the identity should continue to be in the TSDB or whether the status should be changed (for example, No Fly to Selectee)." Lubman Decl., 18, ECF No. 24-2. Mokdad complains that "[a]s TSA cannot make corrections or changes in the TSDB, the current system for redress is meaningless and futile,"

such that it constitutes a "complete and utter denial of due process." R. 17, Appellant Br., 38. Whether or not Mokdad is correct about the futility of the redress system, it is clear that he is complaining about the adequacy of the redress procedures established by TSA pursuant to its statutory authorities outlined above.

TSA is, therefore, a required party to Mokdad's litigation about the adequacy of the redress procedures. *See* Fed. R. Civ. P. 19. But Mokdad failed to join TSA as a defendant. Failure to join a required party is an issue that may be raised for the first time on appeal and that the court may raise *sua sponte*. *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 479 n.4 (6th Cir. 1972) (citing *Provident Tradesmens Bank and Trust Co. v. Patterson*, 390 U.S. 102, 111 (1969)). We dismiss without prejudice Mokdad's claims challenging the adequacy of the redress process. *See id.* We decline to opine at this time whether § 46110 would deprive the district court of subject-matter jurisdiction over Mokdad's claims challenging the adequacy of the redress process, including any broad constitutional claims, if he were to file a new suit naming TSA as a defendant. *Cf. Burdue v. FAA*, 774 F.3d 1076 (6th Cir. 2014).

IV.

To the extent that Mokdad brings a direct challenge to his placement by TSC on the No Fly List, however, he is challenging a TSC order, not a TSA order. As discussed above, although Congress has given TSA the responsibility of establishing redress procedures for travelers who believe they have been wrongly included on the No Fly List, TSA does not determine who is placed on the No Fly List; TSC does. Notwithstanding the government's attempts to characterize his claim as a challenge to TSA's decision to deny him boarding, Mokdad makes clear that he is "challeng[ing] his actual placement on the No Fly List by the TSC." R. 17, Appellant Br., 11. TSC is administered by the FBI. The fact that TSC is an inter-agency center that is staffed by officials from multiple agencies, including the FBI, DHS, Department of State, Customs and Border Protection, and also TSA, does not transform TSC's order placing an individual on the No Fly List into an order of the TSA. *See Ibrahim*, 538 F.3d at 1254–56.

The district court found that even if Mokdad's claim challenging his placement on the No Fly List is a challenge to a TSC order, that claim is "inescapably intertwined" with a TSA order

and therefore the court of appeals has exclusive jurisdiction under § 46110. 2013 WL 8840322, at *4–5. We find this to be a misreading of the doctrine of inescapable intertwinement and we reject it, consistent with the Ninth Circuit's holding in *Ibrahim*. 538 F.3d at 1255–56. Under the doctrine of inescapable intertwinement, "statutes such as Section 46110(c) that vest judicial review of administrative orders exclusively in the courts of appeals also preclude district courts from hearing claims that are 'inescapably intertwined' with review of such orders." *Merritt v. Shuttle, Inc.* (*Merritt II*), 245 F.3d 182, 187 (2d Cir. 2001). The purpose of the inescapable-intertwinement doctrine is to prevent a plaintiff from "circumvent[ing] the exclusive jurisdiction of the court of appeals by collaterally attacking an administrative order in a federal district court." *Ligon v. LaHood*, 614 F.3d 150, 155 (5th Cir. 2010) (citing *Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993)).

The leading Supreme Court case discussing the scope of exclusive-jurisdiction provisions such as § 46110 is *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958).[2] There, the statutory provision at issue was section 313(b) of the Federal Power Act, which vested in the court of appeals exclusive jurisdiction for judicial review of orders of the Federal Power Commission. 357 U.S. at 335. The Court ruled that this provision

> necessarily precluded de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review. Hence, upon judicial review of the Commission's order, all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all.

*Id.* at 336 (footnote omitted). The Second Circuit observed that the "inhering in the controversy" language in *City of Tacoma*, although broad on its face,

> must be read in relation to the Supreme Court's other statements that, under Section 313(b), a party aggrieved by an administrative *order* may seek judicial review of the order in the courts of appeals, that the courts of appeals have exclusive jurisdiction to affirm, modify or set aside such *orders*, and that all objections to such *orders* must be made in the courts of appeals or not at all. We thus read *City of Tacoma* as holding that Section 313(b) precludes (i) *de novo* litigation of issues inhering in a controversy over an administrative *order*, where

---

[2]Our sister circuits have characterized *City of Tacoma* as the leading case on this issue. *See, e.g.*, *Merritt II*, 245 F.3d at 187 (citing *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 261 (10th Cir. 1989)).

one party alleges that it was *aggrieved by the order*, and (ii) all other modes of judicial review *of the order*.

*Merritt II*, 245 F.3d at 188.  Later decisions of the Supreme Court have reiterated that exclusive-jurisdiction provisions bar litigants from "requesting the District Court to enjoin action that is the outcome of the agency's order," *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984), but not claims that are "wholly collateral to a statute's review provisions," *Thunder Basin*, 510 U.S. at 212 (internal quotation marks omitted) (citing *Heckler v. Ringer*, 466 U.S. 602, 618 (1984)).

Consistent with these decisions, our sister circuits that have addressed inescapable intertwinement in the context of § 46110 have asked whether the claim that the plaintiff seeks to raise—typically a constitutional tort claim—is inescapably intertwined with an order of a covered agency.  "A claim is inescapably intertwined [with an agency order] if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order."  *Merritt II*, 245 F.3d at 187 (citing *City of Tacoma*, 357 U.S. at 336, 339).  "[D]istrict courts lack jurisdiction not only over direct challenges to FAA[3] orders, but also over damages claims that are 'inescapably intertwined with a review of the procedures and merits surrounding an FAA order.'"  *Ligon*, 614 F.3d at 155 (quoting *Zephyr Aviation, LLC v. Dailey*, 247 F.3d 565, 572 (5th Cir. 2001)).  An illustrative example is the Ninth Circuit's decision in *Tur v. FAA*, 104 F.3d 290 (9th Cir. 1997).  Tur was a helicopter pilot whose airman's certificate had been revoked by the FAA, a revocation that was affirmed by the Ninth Circuit.  *Id.* at 291.  Tur then sued two FAA attorneys, "seek[ing] monetary damages . . . for depriving him of his property interest in his airman's certificate without due process of law through their knowing use of false testimony against him before the ALJ."  *Id.*  The Ninth Circuit dismissed, finding that "Tur's claims are inescapably intertwined with the merits of the previous revocation order."  *Id.* at 292.

Here, by contrast, the government in effect urges that we find that a *direct challenge to one agency's order* is inescapably intertwined with *another agency's order*—that Mokdad's challenge to TSC's order placing him on the No Fly List is inescapably intertwined with both

---

[3]The FAA is also covered by § 46110.  *See* 49 U.S.C. § 46110(a).

TSA's order denying him boarding and TSA's orders governing the redress process. This would be an unprecedented departure from the doctrine of inescapable intertwinement as applied in other circuits.

The government contends that this approach—namely, finding that a direct challenge to one agency's order can be brought only in the court of appeals because the order of a second agency (which is covered by a special-review statute) is dependent on the first agency's order— would be consistent with *Americans for Safe Access v. DEA*, 706 F.3d 438 (D.C. Cir. 2013). The government, however, misreads that case. Under 21 U.S.C. § 877, the courts of appeals have exclusive jurisdiction over final determinations of the Drug Enforcement Administration (DEA). Under 21 U.S.C. § 811, when DEA considers whether to reschedule a drug, DEA must request from the Department of Health and Human Services (HHS) "a scientific and medical evaluation" of the drug, and is bound by HHS's evaluation "as to such scientific and medical matters." The government reads *Americans for Safe Access* to hold that an attack on HHS's "underlying evaluation of the scientific and medical evidence" cannot be brought as a district court action directed at HHS, but can be brought only in the court of appeals pursuant to the exclusive jurisdiction provision that applies to DEA. R. 20, Appellee Br., 27. This proposition lacks support in the text of the opinion, which simply reiterates that "DHHS' recommendations are binding on the DEA insofar as they rest on scientific and medical determinations." *Ams. for Safe Access*, 706 F.3d at 450. The plaintiff-appellants in that case *chose* to attack HHS's finding as part of their case against DEA, but the court did not hold that they could not have separately attacked HHS's finding in a direct challenge had they chosen to do so. *Id.*

Indeed, the D.C. Circuit has made clear in another case—a case about the very statute at issue in this case, § 46110—that the doctrine of inescapable intertwinement has never been construed in the way that the government urges. *See Ege v. U.S. Dep't of Homeland Security*, No. 13-1110, 2015 WL 1903206, at *3 (D.C. Cir. Apr. 28, 2015) ("Although courts use the 'inescapably intertwined' doctrine to review a *claim* not expressly included in a jurisdictional grant, we are aware of no case—and neither party cites one—in which a court has used the 'inescapably intertwined' doctrine to enjoin a *party* not so included.").

Nor does our decision in *Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013), compel us to conclude that Mokdad's claims against the TSC are channeled by § 46110 exclusively to the court of appeals. Our holding in *Shearson* was simply that a plaintiff seeking to challenge her alleged inclusion on the No Fly List must first exhaust her administrative remedies, including the TSA's redress program. *Id.* at 594. Here, the government conceded at oral argument that Mokdad has exhausted his administrative remedies. The government argues, however, that because plaintiffs are required to exhaust their administrative remedies through TSA's redress process, any further claims related somehow to one's alleged inclusion on the No Fly List— whether against TSA or TSC—must be brought only to the court of appeals, pursuant to § 46110. We disagree. The question of whether a plaintiff must exhaust administrative remedies before bringing suit is distinct from the question of in which court a plaintiff can sue after exhaustion. As we emphasized in *Shearson*, practical considerations of promoting judicial efficiency and giving agencies the first "opportunity to resolve problems with their procedures" undergird the exhaustion requirement. *Id.* These considerations were the basis for our holding that even a plaintiff seeking to bring claims against TSC must first exhaust her administrative remedies through TSA. By contrast, the purpose of the doctrine of inescapable intertwinement is to prevent plaintiffs from circumventing specialized review statutes set up by Congress. The practical rationale underlying our holding in *Shearson* does not extend to the context of inescapable intertwinement.

In sum, we decline to accept the government's invitation to expand the inescapable-intertwinement doctrine so as to find that Mokdad's claim against the TSC is pulled within the ambit of the exclusive-review statute that applies to TSA. Doing so not only would be inconsistent with existing law but also would run the risk of inadvertently expanding the number and range of agency orders that might fall under exclusive-jurisdiction provisions that Congress did not intend to sweep so broadly. We therefore reverse the district court's judgment that it lacked subject-matter jurisdiction to hear Mokdad's claim directly challenging his placement by TSC on the No Fly List. That claim is remanded to the district court, which has subject-matter jurisdiction under 28 U.S.C. § 1331 that has not been displaced by 49 U.S.C. § 46110.

V.

For the foregoing reasons, we dismiss without prejudice Mokdad's challenges to the adequacy of the redress process, because he failed to join TSA as a defendant. We reverse the judgment of the district court dismissing Mokdad's challenge to his alleged placement on the No Fly List by TSC and remand for further proceedings in the district court.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

ALICE M. BATCHELDER, Circuit Judge, concurring in part and dissenting in part. I concur in Sections I through III of this panel's opinion, but I dissent from Section IV. I would hold that Mokdad's challenge to the TSC's inclusion of his name on the No-Fly List is inescapably intertwined with the actions of the TSA and DHS. Therefore, according to the broad language of 42 U.S.C. § 46110, original jurisdiction lies in this court, not in the district court.

As stated in the panel's decision, "[a] claim is inescapably intertwined [with an agency order] if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order." *Merritt II*, 245 F.3d at 187 (citing *City of Tacoma*, 357 U.S. at 336, 339). Here, Mokdad's challenge to the TSC's placement of his name on the No-Fly List implicates two other relevant agency actions. First, the TSA prevented Mokdad from boarding flights to and from the United States. Second, the DHS denied Mokdad's request for relief in a TRIP determination, stating that no changes or corrections were warranted at that time. Both of these other agency actions are specifically mentioned in Mokdad's complaint. In the absence of these other agency actions, Mokdad would not have suffered the damages he alleged and his challenge to the TSC's action would be meaningless. The actions of the TSA and DHS give teeth to the actions of the TSC and therefore they must be considered together. Thus, Mokdad's challenge to the No-Fly List is inescapably intertwined with the TSA's decision to prevent him from boarding and the DHS's determination to deny him relief.

For these reasons, I dissent from Section IV of this panel's decision. Original jurisdiction properly lies in this court, not in the district court.