RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0214p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NASSER BEYDOUN (16-2168); MAAN BAZZI (16-2406),
                                *Plaintiffs-Appellants*,

*v.*

JEFFERSON B. SESSIONS, III, Attorney General, et al.,
                                *Defendants-Appellees*.

Nos. 16-2168/2406

---

**16-2168**

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:14-cv-13812—Judith E. Levy, District Judge.

**16-2406**

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-10123—Sean F. Cox, District Judge.

Argued: August 2, 2017

Decided and Filed: September 12, 2017

Before: CLAY, GRIFFIN, and THAPAR, Circuit Judges.

---

## COUNSEL

**ARGUED:** Nabih H. Ayad, AYAD LAW, P.L.L.C., Detroit, Michigan, for Appellants. Joshua Waldman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Nabih H. Ayad, AYAD LAW, P.L.L.C., Detroit, Michigan, for Appellants. Joshua Waldman, Sharon Swingle, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Plaintiffs Nasser Beydoun and Maan Bazzi each separately sued various federal government officials challenging their placement on the federal government's "Selectee List," which designates them for enhanced screening at the airport.  Asserting that their Fifth Amendment right to due process was violated, Plaintiffs sought declaratory and injunctive relief, with the ultimate aim of having their names removed from the government's enhanced screening list.  However, in both cases, the district court dismissed their complaints and, in Beydoun's case, determined that any amendment would be futile. Plaintiffs appealed, and we consolidated the cases for purposes of oral argument, given the similarity of the facts and arguments presented in both cases.  For the reasons set forth below, we **AFFIRM** the judgments of the district court.

**BACKGROUND**

Plaintiff Nasser Beydoun is a United States citizen and resident of Dearborn, Michigan. According to his complaint, every time Beydoun attempts to board an airplane, he is subjected to "excessive delays, secondary screening, being singled out at check points, and being singled out for additional screening at the gate."  As a result, Beydoun "has missed countless flights."  He also claims that he has been humiliated and that his business ventures have suffered because he is subjected to extra security measures.

Plaintiff Maan Bazzi, who is also a United States citizen, similarly claims that he is only allowed to board flights after undergoing additional screening and experiencing excessive delays. For example, when Bazzi was flying from Brazil to Texas, he "was subjected to extra screening for approximately 10 minutes after receiving a boarding pass and was told to wait as [he] was going to be the last person boarded on the flight."  After arriving in Texas, Bazzi underwent an additional hour of questioning and had his bags searched for explosives.  Bazzi also had his passport "confiscated" for an hour at the Las Vegas airport and was taken for additional screening that lasted thirty minutes.  At least once, Bazzi canceled one of his planned trips in order to avoid the "the stress and embarrassment of extra screening."

Based on their experiences going through airport security and boarding airplanes, Beydoun and Bazzi believe that they are on the Selectee List, which designates individuals for enhanced security screening due to the threat they may pose to "civil aviation or national security." *See* U.S. Gov't Accountability Office, GAO-08-110, Terrorist Watchlist Screening: Opportunities Exist to Enhance Management Oversight, Reduce Vulnerabilities in Agency Screening Processes, and Expand Use of the List 35 (2007). For example, individuals on the Selectee List "are to receive additional security screening prior to being permitted to board an aircraft, which may involve a physical inspection of the person and a hand-search of the passenger's luggage." *Id.*

The Selectee List is a subset of the government's Terrorist Screening Database ("TSDB"). The TSDB "is developed and maintained by the Terrorist Screening Center (TSC), a multi-agency center that was created in 2003 and is administered by the Federal Bureau of Investigation (FBI), which in turn is part of the Department of Justice." *Mokdad v. Lynch*, 804 F.3d 807, 809 (6th Cir. 2015). Officials from multiple agencies staff the TSC, including individuals from the FBI, the Department of Homeland Security ("DHS"), the Department of State, Customs and Border Protection, and the Transportation Security Administration ("TSA"). *Id.* "TSC personnel decide whether to accept or reject the 'nomination' of a person by the FBI or the National Counterterrorism Center (NCTC) to the TSDB" or the Selectee List. *Id.* at 810. "TSC also decides whether to remove a name from the TSDB after it receives a redress request that has been submitted through" DHS's Traveler Redress Inquiry Program ("DHS TRIP"). *Id.*

According to their complaints, Beydoun and Bazzi have both attempted to use the procedure established by DHS TRIP to challenge their inclusion on the Selectee List. However, each time, the government failed to remove them from the list and has only sent them generalized responses to their inquiries. In addition, in both cases, the government has neither confirmed nor denied that Plaintiffs are on the Selectee List.

Beydoun filed a complaint in federal district court on October 3, 2014, naming the Attorney General of the United States, the Director of the Federal Bureau of Investigation, and the Director of the Terrorist Screening Center, as Defendants. Beydoun asserted two claims against Defendants: one for failing to provide notice and a hearing to allow him to challenge his

alleged inclusion on the Selectee List, in violation of the Fifth Amendment; and the other for unlawful agency action, pursuant to the Administrative Procedure Act ("APA") and 5 U.S.C. § 706. In addition to asserting these claims on his own behalf, Beydoun indicated that he was filing his complaint as a class action. Beydoun's case was held in abeyance while this Court decided another appeal, *Mokdad v. Lynch*, inasmuch as the holdings in that case directly implicated Beydoun's claims. After the opinion in *Mokdad* was issued and Beydoun's case was returned to active status, Defendants filed a motion to dismiss the complaint. The district court held a hearing on the motion and, on July 14, 2016, issued an opinion dismissing Beydoun's complaint and denying him leave to amend.

Bazzi filed his complaint asserting the same two causes of action as Beydoun on January 14, 2016. In addition to naming the same Defendants as in Beydoun's case, Bazzi also named the Administrator of the TSA as a Defendant. Just as in Beydoun's case, Defendants filed a motion to dismiss Bazzi's complaint. After conducting a hearing on the motion, the district court ruled in Defendants' favor. In so doing, the district court relied heavily on the reasoning already provided in Beydoun's case. These timely appeals followed.[1]

## DISCUSSION

Plaintiffs present two issues on appeal. First, they assert that the district court erred in construing their complaints as challenging the redress procedures available to have their names removed from the Selectee List. Plaintiffs insist that they were not, in fact, claiming that the redress procedures violate the Fifth Amendment. Instead, they were challenging the inclusion of their names on the Selectee List in the first place. Second, Plaintiffs contend that the district court erred in determining that their alleged inclusion on the Selectee List does not implicate a liberty interest protected by the Fifth Amendment. We address each issue in turn.

### A. Jurisdiction

The district court had jurisdiction over these declaratory judgment actions pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1331 inasmuch as Plaintiffs asserted claims under the Fifth

---

[1]The appeals are timely because the notices of appeal were filed within sixty days of the district court's entry of judgment in each case. Fed. R. App. P. 4(a)(1)(B).

Amendment challenging their placement on the Selectee List.  *See Mokdad*, 804 F.3d at 815 (holding that the district court has "subject-matter jurisdiction to hear [plaintiff's] claim directly challenging his placement by TSC on the No Fly List . . . under 28 U.S.C. § 1331[, which] has not been displaced by 49 U.S.C. § 46110").  This Court has jurisdiction to hear these appeals pursuant to 28 U.S.C. § 1291.

## B.      Standard of Review

"We review de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim."  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 451 (6th Cir. 2003)).  In addition, this Court "review[s] the denial of a motion to amend under the abuse-of-discretion standard, 'unless the motion was denied because the amended pleading would not withstand a motion to dismiss, in which case the standard of review is de novo.'"  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)).

## C.      Failure to State a Claim

Plaintiffs first contend the district court incorrectly determined that their complaints fail to challenge their placement on the Selectee List, and instead only assert a claim based on the allegedly inadequate redress procedures of DHS TRIP.  The district court, in Beydoun's case, held that, "[o]n the face of the complaint, [Beydoun] does not directly challenge his placement on the Selectee List."  The district court explained:

> [Beydoun] alleges in his due process claim that he is "entitled to a legal system that affords him post-deprivation notice and an opportunity to contest the deprivations of his rights," and "[t]he DHS TRIP process presently presents no meaningful opportunity for [Beydoun] to provide exculpatory evidence in an effort to be taken off the [Selectee] or Terrorist Watch Lists."  [Beydoun]'s due process claim explicitly concerns the alleged lack of notice and hearing, and is thus a challenge to the DHS TRIP redress procedures.
>
> And [Beydoun] alleges in his APA claim that the "DHS TRIP process does not provide a meaningful mechanism for travelers who have been denied boarding or subjected to unwarranted additional screenings to correct erroneous information in the government's terrorism databases," and "fails to consider an

important aspect of Congress's instructions and violates § 706(2)(A) of the APA. . . ." As with [Beydoun]'s due process claim, his APA claim is a challenge to the DHS TRIP redress process.

In Bazzi's case, the district court noted that Bazzi "filed a complaint that is virtually identical to the complaint filed in *Beydoun.*" The court agreed with the analysis in *Beydoun* and held:

> This Court also finds that [Bazzi]'s Complaint did not directly challenge[] his placement on the Selectee List . . . . That is because although Plaintiff's requested relief includes an injunction requiring Defendants to remove [Bazzi] from the Selectee List, the two actual counts included in the Complaint are based only on challenges to the DHS TRIP redress process.

On appeal, Plaintiffs argue that the district court erred in holding that they never asserted claims directly challenging their placement on the Selectee List. In support of their arguments, Plaintiffs point to this Court's opinion in *Mokdad*, in which we interpreted a complaint that was also almost identical to the two complaints at issue here, with the notable exception being that it involved the No Fly List, not the Selectee List. 804 F.3d at 810–11. Indeed, the same lawyer is responsible for writing all three complaints.

We began our inquiry in *Mokdad* by "focus[ing] closely on what exactly Mokdad has alleged and against whom." *Id.* On the face of the complaint, we noted that Mokdad asserted two claims: the first of which "alleged that defendants violated the Fifth Amendment Due Process Clause by harming his reputation and depriving him of his right to travel while failing to provide post-deprivation notice and a hearing," and the second of which "alleged that defendants had engaged in unlawful agency action under the Administrative Procedure Act." *Id.* at 811. In examining Mokdad's APA claim, we noted that such a claim:

> is premised on [Mokdad's] contention that "defendants' actions as described herein"—namely, allegedly placing him on the No Fly List, and "fail[ing] to provide a fair and transparent remedial mechanism that would allow affected individuals to challenge their inclusion"—"were arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights," in violation of 5 U.S.C. § 706.

*Id.* (second alteration in original).

Based on the above language in the complaint, we held that Mokdad's challenges fell into two groups:

First, Mokdad challenges the adequacy of the procedures established for him to contest his alleged inclusion on the No Fly List (*i.e.*, the redress process): he argues that the procedures are unlawful under the APA and unconstitutional under the Fifth Amendment. Second, Mokdad challenges his alleged placement on the No Fly List: he argues that defendants' actions were unlawful under the APA.

*Id.*

Because we interpreted the complaint in *Mokdad* as asserting claims challenging both the redress process and the plaintiff's inclusion on the No Fly List, we now hold that, in these cases, the district court erred in concluding that Plaintiffs failed to directly challenge their placement on the Selectee List. While the district court's interpretation may have been reasonable, we are bound by this Court's previous interpretation of the exact same language. Therefore, the district court should have considered Plaintiffs as asserting a separate claim that their inclusion on the Selectee List violated the APA.[2]

However, because this Court is free to affirm the judgment of a district court on any basis presented by the record, *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002), and because Plaintiffs have failed to state a claim upon which relief can be granted, we nevertheless affirm the district court's judgments. Indeed, even though the district court determined that Plaintiffs' complaints did not assert claims directly challenging their placement on the Selectee List, it nevertheless analyzed the merits of the claims in denying Plaintiffs leave to amend their complaints. Specifically, the district court determined that the "requested amendment would fail to establish that [Plaintiffs'] placement on the list violates a life, liberty or property interest protected by the Due Process Clause . . . ."

Plaintiffs are asserting a claim that Defendants violated the APA by acting arbitrarily and capriciously. However, Plaintiffs' counsel confirmed that the APA claims are coextensive with

---

[2]Unlike in *Mokdad*, we have no occasion to consider Plaintiffs' challenge to the redress procedures, as both Plaintiffs expressly abandoned that claim in front of the district court and on appeal. For the same reason, we do not need to address whether 49 U.S.C. § 46110 would bar Plaintiffs from filing a challenge to the redress procedures in the district court.

their constitutional claims. Before addressing whether Plaintiffs have asserted a viable claim, we first must clarify what, exactly, Plaintiffs are *not* claiming. While the complaints can be read as asserting a procedural due process claim stating that Plaintiffs' Fifth Amendment rights were violated because Defendants have not provided Plaintiffs with any post-deprivation notice or any meaningful opportunity to contest their continued inclusion on the Selectee List, Plaintiffs' counsel expressly abandoned that claim both in front of the district court and on appeal. Plaintiffs also could, theoretically, be intending to assert an equal protection claim; however, nowhere in the complaints or in the appellate briefs have Plaintiffs actually addressed such a claim. Given the statements Plaintiffs' counsel made at oral argument, we can only logically construe the complaints as asserting a substantive due process claim. To that end, Plaintiffs have alleged that Defendants infringed upon two different fundamental rights: (1) the right to "travel[] free from unreasonable burdens within, to or from the United States of America," and (2) the "right to [their] reputation and to be free from the false allegation that [they are] terrorist[s] or . . . associated with terrorist activities."**[3]**

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). As we have often observed, "[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003). Indeed, substantive due process only "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 720–21 (internal quotations and citations omitted). In order to adequately assert a substantive due process claim, a plaintiff generally must allege "that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny." *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1065 (6th Cir. 1998)). Because we find that

---

**[3]**Plaintiffs have also claimed that they have a right not to be singled out for punishment without due process. However, Plaintiffs' argument essentially appears to be about the redress process and the alleged lack of necessary procedural protections. Because Plaintiffs have expressly abandoned their argument challenging the redress process, we need not further address this argument.

Plaintiffs have failed to adequately allege that their fundamental rights were violated, we affirm the judgments in both cases.

### 1.    Right to Travel

The Supreme Court has recognized that "[f]reedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Dunn v. Blumstein*, 405 U.S. 330, 338 (1972) (internal quotation omitted); *see also Kent v. Dulles*, 357 U.S. 116, 125–26 (1958) ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment. . . . Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." (citations omitted)). Indeed, "[t]he constitutional right of interstate travel is virtually unqualified." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978). However, "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States." *Haig v. Agee*, 453 U.S. 280, 306 (1981). Therefore, "the freedom to travel abroad . . . is subject to reasonable governmental regulation." *Id.*

A fundamental right will only be implicated by government action that, at a minimum, "*significantly* interferes with the exercise of a fundamental right." *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (emphasis added). Burdens that are incidental or negligible are "insufficient to implicate [the] denial of the right to travel." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007) (citing *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007)). At issue in these cases is whether Plaintiffs' alleged placement on the Selectee List has created more than an incidental burden on their right to travel. The district court found that the instances alleged by Plaintiffs do not rise to such a level as to implicate a constitutional right, and therefore that Plaintiffs have failed to state a claim.

On appeal, Plaintiffs argue that the district court erred in considering the burden placed on Plaintiffs by their inclusion on the Selectee List as negligible or incidental. Beydoun alleged that he has missed "countless flights" after being subjected to lengthy secondary screenings. According to Beydoun, these delays had the effect of deterring him from flying and taking away

his right to travel. However, Beydoun has not attempted to provide any information about when those delays occurred, how long the delays were, what type of enhanced screening he was subjected to, or indeed any information beyond general allegations that he has been prevented from traveling.

Bazzi's complaint provides a few more details. For example, Bazzi mentions several instances when he has been delayed or subjected to additional screening, with delays ranging from ten minutes to one hour in duration. Bazzi also points to the fact that, in his complaint, he specifically alleged that he had been deterred from flying on one occasion.

The district court correctly held that Plaintiffs did not allege that any protected interest was violated by them being on the Selectee List. While Plaintiffs may have been inconvenienced by the extra security hurdles they endured in order to board an airplane, these burdens do not amount to a constitutional violation. Importantly, Plaintiffs have not actually been prevented from flying altogether or from traveling by means other than an airplane. Therefore, Plaintiffs' cases are distinguishable from those in which the plaintiffs claimed they could not fly at all because they were on the No Fly List. *See, e.g.*, *Latif v. Holder*, 969 F. Supp. 2d 1293, 1303–04 (D. Or. 2013) ("Having to show identification to board a commercial aircraft and undergoing enhanced security screening for less than an hour does not rise to the same level of deprivation as being denied boarding on any flight for the indefinite future."); *Mohamed v. Holder*, Civ. A. No. 11-0050, -- F. Supp. 3d --, 2017 WL 3086644 (E.D. Va. July 20, 2017).

The burdens alleged by Plaintiffs, to the extent they provided specific details about those incidents, can only be described as incidental or negligible and therefore do not implicate the right to travel. Plaintiffs point to no authority supporting their claim that a delay of ten minutes, thirty minutes, or even an hour at the airport violates their fundamental right to travel, and we are aware of none. Indeed, the Second Circuit rejected a claim that plaintiffs were impeded from exercising their right to travel when they were delayed for an entire day. *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 133–36, 141 (2d Cir. 2010). When Plaintiffs' only allegations amount to delays that many individuals are likely to experience at the airport, it is hard to conclude that the fundamental right to travel has been implicated.

Finally, we are not convinced by Plaintiffs' contention that, because they were deterred from traveling, they have a constitutional claim. In support of their argument, Plaintiffs cite to *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898 (1986), in which a plurality of the Supreme Court remarked that "[a] state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Id.* at 903 (plurality opinion) (internal quotations and citations omitted). However, we have recognized that burdens that are incidental or negligible can "hardly be said to deter or penalize travel." *League of United Latin Am. Citizens*, 500 F.3d at 535; *see also Pollack v. Duff*, 793 F.3d 34, 45 (D.C. Cir. 2015) (remarking that if a law's "effect upon [a plaintiff's] willingness to travel, *i.e.*, to exercise her right to travel, is 'negligible[,]' [it] does not warrant scrutiny under the Constitution"); *Matsuo v. United States*, 586 F.3d 1180, 1183 (9th Cir. 2009) ("[N]ot everything that deters travel burdens the fundamental right to travel."). Indeed, even if Plaintiffs were, in fact, deterred from flying after being delayed for an hour, we cannot conclude that this minor disturbance actually resulted in denying Plaintiffs the right to travel. *See Torraco*, 615 F.3d at 141 ("Assuming that the actions the defendants took did in fact deter these plaintiffs . . . , the most-inconvenienced plaintiff was delayed a little over one day. This was a minor restriction that did not result in a denial of the right to travel."). Therefore, the district court correctly concluded that Plaintiffs failed to state a claim that their right to travel was infringed upon by Defendants.

### 2.       Reputational Harm

Plaintiffs also alleged that they suffered reputational harm by being on the Selectee List. Such a claim is only cognizable if the governmental action "both damaged [a plaintiff's] reputation (the stigma) and . . . 'deprived [him or her] of a right previously held under [the] law' (the plus)." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (quoting *Paul v. Davis*, 424 U.S. 693, 708 (1976)).

The district court rejected Plaintiffs' reputational harm claims because, even "[a]ssuming that plaintiff[s] sufficiently allege[] the stigma element, [they] fail[] to sufficiently allege that [they] were deprived of a right previously held under the law." *Beydoun v. Lynch*, No. 14-CV-13812, 2016 WL 3753561, at *5 (E.D. Mich. July 14, 2016); *Bazzi v. Lynch*, No. 16-10123, 2016

WL 4525240, at *7 (E.D. Mich. Aug. 30, 2016). Notably, because Plaintiffs could still fly, after passing enhanced screening and experiencing delays, they were not deprived of any previously held rights.

On appeal, Plaintiffs primarily focus on the "stigma" element of their reputational harm claims, arguing that they have been routinely humiliated by being singled out for screening, and that their reputation was harmed because those around them when they travel could infer that they were suspected of terrorism. As to the "plus" part, meaning the right previously held under the law that Plaintiffs were deprived of, Plaintiffs rely solely on the same argument they put forth regarding the right to travel. However, because Plaintiffs cannot show that their liberty interest in travel was infringed upon by being subject to relatively minor additional screening, Plaintiffs' reputational harm claims also fail.

### D.        Leave to Amend the Complaint

Finally, Beydoun argues that the district court erred by denying him leave to amend his complaint.[4] "Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). However, leave to amend a complaint "may be denied where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party for virtue of allowance of the amendment, *futility of amendment*, etc.'" *Id.* (emphasis in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

While recognizing this general rule, we have also noted that "implicit in [Rule 15(a)] is that the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002) (citation omitted). Thus, we have found that the district court did not abuse its discretion in denying a motion to

---

[4]Bazzi does not argue that he should have been allowed to amend his complaint.

amend when a plaintiff "submitted none of th[e] facts to aid the court in deciding whether justice required the court to grant leave to amend." *Id.* Indeed, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) (quotation and citation omitted), *abrogated on other grounds by Doshi v. Gen. Cable Corp.*, 823 F.3d 1032 (6th Cir. 2016). Thus, in these situations, we have found that "[t]here was no 'motion' to deny," and, "[a]ccordingly, we . . . review the district court's actions for abuse of discretion." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 485 (6th Cir. 2010) (citing *PR Diamonds, Inc.*, 364 F.3d at 698).

In this case, we cannot conclude that the district court abused its discretion in denying Beydoun leave to amend his complaint. At the hearing on Defendants' motion to dismiss, Beydoun made an oral motion asking for leave to amend his complaint if the district court "were in any way inclined to grant defendants' motion to dismiss." The district court denied the motion, finding that any amendment would be futile. Beydoun now challenges that decision, arguing that the district court should have allowed him to allege facts that would support his claims of reputational harm and infringement of the right to travel. However, Beydoun never informed the district court of what facts he would use to supplement his claim, thus allowing him to withstand a motion to dismiss. Indeed, even on appeal, Beydoun does not include any specific allegations that, if true, would allow us to conclude that Beydoun's rights were violated. Given the absence of any indication that Beydoun's amended complaint would survive a motion to dismiss, we conclude that the district court did not abuse its discretion in denying Beydoun's unsupported motion.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgments of the district court.