**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0546n.06

**No. 17-6241**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr>
<td>
M.S., a minor, by his parent and next friend, Sharonda Covington; DEREK STEPP, Individually and on behalf of all others similarly situated; SHARONDA COVINGTON, Individually and on behalf of all others similarly situated,<br><br>
   Plaintiffs-Appellants,<br><br>
v.<br><br>
HAMILTON COUNTY DEPARTMENT OF EDUCATION; DURHAM SCHOOL SERVICES, L.P., Individually; BENJAMIN COULTER, Individually,<br><br>
   Defendants-Appellees.
</td>
<td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td>
<td>
**FILED**<br>
Nov 01, 2018<br>
DEBORAH S. HUNT, Clerk
<br><br>
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE<br><br>
OPINION
</td>
</tr>
</table>

**BEFORE: ROGERS and BUSH, Circuit Judges; WATSON, District Judge.**[*]

**JOHN K. BUSH, Circuit Judge.** Johnthony Walker crashed a school bus while transporting thirty-seven children from the Woodmore Elementary School in Chattanooga, Tennessee. Six students died; a number of others were injured. This appeal presents the question whether an amended class action complaint filed on their behalf, with claims under 42 U.S.C. § 1983 and state law, was properly dismissed under Federal Rule of Civil Procedure 12(b)(6). We must decide whether the pleadings are sufficient for "the court to draw the reasonable inference" that the bus driver's employer and the school district are liable under § 1983 for the injuries

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

Plaintiffs sustained as a result of the crash. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We **AFFIRM** the district court's dismissal with respect to Walker's employer, Durham School Services, L.P. ("Durham"), but **REVERSE** with respect to the school district, the Hamilton County Department of Education (the "District").[1] We also **AFFIRM** the district court's denial of Plaintiffs' request to further amend the complaint to add allegations and **REVERSE** the district court's denial of their request to amend to correct a scrivener's error.

## I

We recite the relevant facts as alleged in the amended complaint. In 2013, Durham and the District entered into a contract for Durham to provide busing services to the District. This contract stated that Durham and the District would cooperate closely in the provision of school bus routes and would mutually promulgate rules for bus operation. By early November 2016, Durham and the District had received multiple complaints that Walker, one of Durham's bus drivers, drove his school bus in a dangerous fashion. Durham and the District did nothing to prevent Walker from continuing to drive dangerously or to prevent students from riding on his bus. In fact, Woodmore Elementary's principal, who was a District employee, instructed Woodmore students on a daily basis to board Walker's bus. On November 21, Walker crashed his bus, which resulted in six students' fatalities and injuries to Plaintiff M.S. and several other students, causing mental and pecuniary harm to M.S.'s parents, Plaintiffs Derek Stepp and Sharonda Covington.

The amended complaint against Durham, the District, and Coulter alleged violations of 42 U.S.C. § 1983 for failure to protect M.S. from a state-created danger and for violating his right to bodily integrity, as guaranteed by the Fourteenth Amendment to the Constitution of the United

---

[1] We also affirm the district court's dismissal of the claims against Defendant-Appellee Benjamin Coulter (the Supervisor of Transportation for the District) because Plaintiffs-Appellants make no argument in their appellate briefs for reversal of this aspect of the district court's ruling.

States, as well as violations of state law. Plaintiffs also alleged a violation of 42 U.S.C. § 1983 (although labeled a violation of § 1985) based on Defendants' alleged conspiracy to deprive Plaintiffs of their constitutional rights.

Defendants moved for dismissal under Rule 12(b)(6). Plaintiffs' opposition both argued that the amended complaint sufficiently stated claims and requested that, if the district court disagreed, they be granted leave to file a second amended complaint. Plaintiffs also sought leave to amend to rectify a scrivener's error in labeling the alleged conspiracy a violation of § 1985 instead of § 1983.

The district court granted Defendants' motions to dismiss, holding that Plaintiffs had failed to allege facts sufficient to show that Durham was a state actor, that Coulter had created the danger to the students, or that the District had a policy that caused the deprivation of the students' rights. The district court also denied Plaintiffs' request to file a second amended complaint as futile. Having dismissed the federal claims with prejudice, the district court then declined to exercise supplemental jurisdiction over the state-law claims, dismissing those claims without prejudice.

Plaintiffs bring three allegations of error in this appeal: first, that the district court erred in holding that the amended complaint inadequately alleged that Durham was a state actor; second, that the district court erred in holding that there were insufficient allegations that the District had a policy that caused the deprivation of the students' rights; and third, that the district court abused its discretion in denying Plaintiffs leave to further amend their pleadings.

**II**

"Whether the district court correctly dismissed the claims pursuant to Fed. R. Civ. P. 12(b)(6) is a question of law subject to *de novo* review." *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). Construing the complaint in the light most favorable to

Plaintiffs and accepting all factual allegations as true, this court must determine whether the complaint states a plausible claim for relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). A court should not grant a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S at 678.

We review the denial of a motion to amend de novo when a "judge's denial was based on his conclusion that Plaintiffs' amendments would have been futile." *Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 739 (6th Cir. 2005) (citing *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 743 (6th Cir. 2002)). When a district court denies leave to amend as futile, "the basis for its denial of the motion is its purely legal conclusion that the proposed amendment 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). If the district court denied leave to amend exclusively on the grounds of futility, the reviewing court must answer "whether the district judge correctly decided that the proposed amendments would have been futile." *Chaz Constr.*, 137 F. App'x at 739.

**A**

We first address whether the district court properly dismissed the claims against Durham, the bus company. Section 1983 creates liability for private entities only when they act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia . . . ." To state a claim against Durham, therefore, Plaintiffs must allege that Durham,

despite being a private entity, was acting under color of law when it failed to prevent Walker from harming the schoolchildren. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

There are four tests generally applied to determine whether a private actor can be held liable for acting under color of law in § 1983 claims. *See Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). Plaintiffs argue that two tests are relevant here: the "symbiotic relationship or nexus test" and the "entwinement test."

Under the symbiotic relationship or nexus test, "the action of a private party constitutes state action where 'there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.'" *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). "[T]here is no 'readily applicable formula' for finding such a close nexus; divining such a close relationship can only be accomplished 'in the framework of the peculiar facts or circumstances present.'" *Id.* (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 726 (1961)).

Similarly, "the crucial inquiry under the entwinement test is whether the nominally private character of the private entity is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Marie*, 771 F.3d at 364 (citations and internal quotation marks omitted).

Although there is no litmus to determine what actions are enough to constitute a sufficient nexus or entwinement, courts are clear about what actions are *not* enough for a private entity to be considered a state actor. *See Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000). For example, receiving extensive government funding is not enough, *Rendell-Baker*, 457 U.S. at 840;

"mere cooperation" between the entities or "an economic benefit" conferred on a city by a private entity is not enough, *Lansing*, 202 F.3d at 831; regular partnership in public service activities is not enough, *Marie*, 771 F.3d at 363; "extensive state regulation" of the private entity is not enough, *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 52 (1999); and the "minority presence of public officials on the board of a private entity" is not enough, *Lansing*, 202 F.3d at 831.

It also is not enough under either the nexus or the entwinement theory that the parties have a contractual relationship, even when that contract subjects the private actor to an "extensive and detailed" set of requirements. *Wolotsky*, 960 F.2d at 1336. Instead, Plaintiffs must show that the state "played a role in the decision" made by the private actor that led to the deprivation of Plaintiffs' rights, either by showing, for example, that the contract necessitated the private actor's decision or that state actors were involved in the decision. *Id.*

The district court was correct in holding that the amended complaint does not allege either (1) that the contract between Durham and the District played a role in Durham's decision not to discipline or terminate Walker or (2) that any District employee played a role in that decision.

Plaintiffs do not allege that this contract generally, or any specific clause in the contract, required Durham to employ dangerous drivers or in any way impeded Durham's ability to discipline or terminate dangerous drivers. Indeed, the contract, appended to Plaintiffs' response to the motion to dismiss, provides in pertinent part:

> CONTRACTOR'S PERSONNEL: CONTRACTOR shall be solely responsible for hiring sufficient personnel to perform CONTRACTOR duties under this Agreement, provided however, in no event shall CONTRACTOR employ fewer personnel than the CONTRACTOR purposed in its PROPOSAL. Such personnel shall be CONTRACTOR employees and, in no event, shall be the employees of the DISTRICT. CONTRACTOR shall be solely responsible for providing such personnel with appropriate supervision, training, and direction in the personnel job duties.

> In the event the DISTRICT has any questions or concerns regarding the performance or any personnel employed by the CONTRACTOR, the CONTRACTOR may take whatever action it deems necessary and appropriate to address the DISTRICT concern.

(R. 40-1 at 3.)

Unable to rely on the contract for their argument, Plaintiffs nonetheless assert that District personnel had "control over the supervision and discipline of Durham's drivers" and that the District was therefore sufficiently entwined with Durham's decision not to train or supervise Walker adequately. Plaintiffs cite a policy (the "Transportation Policy"), also appended to Plaintiffs' response to the motion to dismiss, providing that a "Transportation Supervisor," a District employee, will have disciplinary power over "[b]us drivers for the Hamilton County Board of Education." (R. 40-2 at 5.)

The district court held that this policy applies to bus drivers employed by the Hamilton County Board of Education, not to Durham employees, citing language in the Transportation Policy indicating that it applies to District personnel, as well as language in the contractual stipulation that bus drivers such as Walker "shall be CONTRACTOR employees and, in no event, shall be the employees of the DISTRICT."

The district court's determination is supported by the fact that, if the Transportation Policy applied to Durham employees, it would contradict the contract between Durham and the District, which provides that Durham "may take whatever action it deems necessary and appropriate" to ameliorate issues that the District might have with Durham bus drivers, including, presumably, actions other than those the Transportation Supervisor might prefer.

But whether the Transportation Policy applied to Walker is beside the point. Even assuming that the District had the power to discipline Walker and that it failed to exercise that power, those facts would be insufficient to show that the District "compelled or even influenced"

Durham's decision not to train or discipline Walker. *Rendell-Baker*, 457 U.S. at 840. The nexus test asks not whether the state actor (the District) was entwined *generally* with the private entity (Durham), but whether the District was entwined with Durham's decision regarding Walker *specifically*.

The amended complaint makes no allegation that any District employee pressured Durham not to train or supervise Walker, assured Durham it need not train or supervise Walker because the District would assume that responsibility, or otherwise had any impact on Durham's decision not to train or supervise Walker. Instead, the pleadings allege only that, independent of Durham's failure, the District also failed to train or supervise Walker. Also absent are allegations that the District was involved in Durham's day-to-day management or played a role in its personnel decisions, particularly its alleged failure to train or discipline Walker. This has been a key factor in two other school bus cases decided by our sister circuits. *See, e.g.*, *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011) (finding that the bus company was not a state actor when it allegedly failed to properly screen and train its employee because there was "no showing that the [governmental entity] exercised coercive power over or significantly encouraged" the bus company's alleged failures); *Black by Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 711 (3d Cir. 1993) (finding no symbiotic relationship between the state and the bus company where the company and its employees "were not performing a function that has been traditionally the exclusive prerogative of the state and there was no state regulation that compelled or even influenced the conduct" at issue (internal quotation marks omitted)).

Even though Plaintiffs allege that the District and Durham worked together to make certain decisions, such as establishing bus schedules and routes, that is not enough to show that Durham's will was so overborne as to render its actions those of the state. *See Marie*, 771 F.3d at 363–64.

Rather, at most it shows that they were working in accordance with the contract—a contract that clearly delineated that personnel decisions were to be made by Durham, not the District. Without allegations of the District's entwinement with Durham's personnel decisions with respect to Walker, Plaintiffs have failed to state a § 1983 claim against Durham. This holding, of course, says nothing about whether recovery may be available against Durham under state law.

**B**

We now turn to whether the district court properly held that the amended complaint insufficiently pleaded a District policy that deprived the students of their constitutional rights. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a school district can be found liable under § 1983 for the unconstitutional acts of its official or employee, even when the official's act did not arise from an explicit policy, if a plaintiff shows "(1) the existence of a clear and persistent pattern of [unconstitutional activity] by school employees; (2) notice or constructive notice on the part of the School Board; (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the School Board's custom was the moving force or direct causal link in the constitutional deprivation." *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996).

The dispute between the parties centers around the first requirement—that a school employee engaged in a clear and persistent pattern of unconstitutional activity. The District argues that Plaintiffs have failed to allege that a District employee engaged in an unconstitutional activity

9

and that, even if they have so alleged, they have failed to allege that the employee had a clear and persistent pattern of doing so. Neither argument is availing at this stage of the litigation.

Plaintiffs' theory of liability is that Woodmore's principal failed to protect the students from a danger that the principal created, in violation of the Due Process Clause of the Fourteenth Amendment. "Under the state-created danger doctrine, a governmental actor can be held responsible for an injury committed by a private person if (1) an affirmative act by the governmental actor either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person; (2) the governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and (3) the governmental actor had the requisite degree of culpability." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation and internal quotation marks omitted).

Plaintiffs have alleged that (1) the principal committed affirmative acts by instructing the schoolchildren to board Walker's bus; (2) this direction endangered the students because of Walker's dangerous driving; (3) this danger was specific to those students; and (4) the principal was sufficiently culpable because she knew that Walker's driving was dangerous. The District contests each point other than the third, which we address in turn.

The District first argues that the principal's directives to board the bus were not affirmative acts because she was merely following the District's policy of assisting students in boarding buses, and her instruction to the Woodmore pupils was therefore an act of *omission*—failing to deviate from the District's policy. This circuit has never held that an affirmative action is not affirmative because it was taken in conformance with a policy, and for good reason. To so hold would vitiate one way of establishing *Monell* liability—by "show[ing] that the particular injury was incurred *because* of the execution of [a] policy." *Doe*, 103 F.3d at 508 (quoting *Garner v. Memphis Police*

10

*Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Even if the principal was following the District's policy, the principal was still allegedly assisting students onto a bus that she knew was dangerous.

The District next argues that the principal's instructing the schoolchildren to board Walker's bus at the end of the school day did not increase the risk to them, but instead merely returned the students to a risky status quo to which they had voluntarily subjected themselves when boarding Walker's bus on the way to school. In support, the District cites two cases. In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 191–93 (1989), a municipality took custody of an abused child, allowed custody of the child to revert to the child's abusive father, and repeatedly failed to effectively monitor the child's safety thereafter. The Supreme Court held that the municipality was not liable, stating that although "the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id*. at 201. But *DeShaney* does not control here, as it was brought under a theory that the municipality had a "special relationship" with the child because it had proclaimed its intention to protect him, not that it had created the danger: the plaintiffs in *DeShaney* "concede[d] the State played no part in creating" the danger to which the child was subjected. *Id*. at 197. Here, whether the principal's act increased the danger to the students is precisely what is at issue.

The District also cites *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003), which did involve a state-created danger claim. In *Bukowski*, police officers removed an abused woman from her abuser's house, investigated the situation, and later, at her request, returned her to the home, where the abuse continued. *Id*. at 705–06. This court held that the officers were not liable because "the act of returning someone to the same dangers that existed status quo ante does not satisfy the state-action requirement" of the state-created danger cause of action. *Id*. at 709. But

11

*Bukowski* is also inapposite here. In *Bukowski*, the "officials were accommodating [the victim's] own wishes" when they drove her to her abuser's home, and they "did not have any knowledge of the dangers facing her." *Id*. at 709. In contrast, Plaintiffs have alleged that the principal instructed her pupils to board Walker's bus and that the principal was fully aware of the dangers they faced on the road ahead.

Finally, the District argues that the principal did not unconstitutionally fail to protect the students from dangers she had created because her actions did not "shock[] the conscience," as required to show that she acted with the requisite degree of culpability. *See Hunt*, 542 F.3d at 535 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Although this court has identified several factors to consider when determining whether a state actor's actions shock the conscience, "our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances" before making that determination. *Lewis*, 523 U.S. at 850. And although there are doubtlessly some cases in which a court could determine that a state actor's actions did not shock the conscience at the motion-to-dismiss stage, this is not that case. Here, the record does not contain the precise number or content of the warnings received by the principal, as the amended complaint contains only two examples from among an unknown number of complaints that the principal received. Because it is conceivable that the principal received complaints such that it would be conscience-shocking for her to have instructed the schoolchildren to board Walker's bus after their receipt, it would be inappropriate to grant a motion to dismiss on this ground.

The district court did not rule on the ground that the principal did not create a danger, but on the distinct ground that, as the District also argues, there can be no "clear and persistent pattern of abuse where there are only two specified complaints." (R. 52 at 21.) This holding mistakes the

locus of unconstitutional activity: it is the *principal*, not Walker, who is alleged to have deprived Plaintiffs of their rights. And Plaintiffs allege that the principal deprived the students of their rights every school-day afternoon between early November and November 21, or approximately fifteen times. Neither the district court nor the District cites any case suggesting that this many instances of unconstitutional activity cannot amount to a pattern of unconstitutional activity, and we are unaware of any so holding. Accordingly, it was error to dismiss the *Monell* claim at this stage.

It should also be noted, however, that even if Plaintiffs ultimately prove the principal engaged in unconstitutional activity, this showing does not necessarily entail that the District is subject to *Monell* liability. To recap, they must also show that there was a clear and persistent pattern of that unconstitutional activity, that the District knew about that pattern, that the District deliberately ignored that pattern, and that the District's ignoring the pattern of unconstitutional activity by the principal had a direct causal link to the deprivation of the students' rights. *Doe*, 103 F.3d at 508.

The pleadings allege that the District had knowledge of the principal's unconstitutional actions during the entire period in which they occurred, that the District took no action either to prevent the principal from instructing the students to board the bus or to make the bus safer, and that the District's failure to act in response to this knowledge caused the deprivation of Plaintiffs' constitutional rights. Whether these allegations will be borne out by evidence must wait for a later stage in this litigation, which should not have been terminated at the motion-to-dismiss stage.

## III

Finally, Plaintiffs asked the district court, in the event it were to dismiss the amended complaint, to allow them to further amend their pleadings, both to fix a scrivener's error and to add allegations. They made this request, however, only in their response to Defendants' motions

to dismiss, and they did not indicate the nature of the allegations that they would add or attach a copy of the proposed second amended complaint. The district court denied this request as futile, and we review this denial de novo. *Chaz Constr.*, 137 F. App'x at 739.

Because the scrivener's error related to a claim against the District, and because, as discussed, the claims against the District should not be dismissed for failure to state a claim, the request to amend the complaint to fix the scrivener's error is not moot, and the district court therefore erred in denying Plaintiffs' request.

Because the claims against the District should not have been dismissed, the request to add allegations as to the District's conduct is moot, as the amended complaint already is sufficient to survive the motion to dismiss.

Because Plaintiffs have not provided sufficient allegations against Durham to allow the claims against Durham to proceed, the request to supplement those allegations is not moot, and we must therefore determine whether the district court abused its discretion in denying leave to amend. *See Beydoun v. Sessions*, 871 F.3d 459, 469–70 (6th Cir. 2017) ("Indeed, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a) . . . . Thus, in these situations, we have found that [t]here was no motion to deny, and, [a]ccordingly, we . . . review the district court's actions for abuse of discretion." (alterations in original) (citations and internal quotation marks omitted)).

We cannot conclude that the district court abused its discretion in denying Plaintiffs leave to add additional allegations as to Durham. Plaintiffs provided neither the district court nor this court any indication as to the nature of the allegations that they wish to include or how they would cure the deficiencies in the amended complaint and, "[g]iven the absence of any indication that

[Plaintiffs'] amended complaint would survive a motion to dismiss, we conclude that the district court did not abuse its discretion in denying [Plaintiffs'] unsupported motion." *Id*. at 470.

## IV

For the above reasons, we **AFFIRM** the district court's grant of Durham's motion to dismiss for failure to state a claim, **REVERSE** the district court's grant of the District's motion to dismiss for failure to state a claim, **AFFIRM** the district court's denial of Plaintiffs' request to further amend the complaint to add allegations, and **REVERSE** the district court's denial of Plaintiffs' request to amend the pleadings to correct a scrivener's error.